UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA GAREY, et al.,<br>　　Plaintiffs,<br><br>　　　　v.<br><br>ABBOTT LABORATORIES, et al.,<br>　　Defendants. | CV 19-7777 DSF (SKx)<br><br>Order GRANTING Plaintiffs' Motion to Remand (Dkt. 23) and DENYING as Moot Plaintiffs' Motion for Leave to File an Amended Complaint (Dkt. 24) |

　　Defendants Abbott Laboratories and Abbott Laboratories, Inc. (collectively, Abbott) removed this case based on diversity jurisdiction. Dkt. 1 (Notice). Plaintiffs Cynthia Garey, Shannon Garey, Erin Kelley, and Megan Mackelvie (Plaintiffs) move for remand. Dkt. 23 (Mot.). Plaintiffs also seek leave to file an amended complaint. Dkt. 24 (Leave Mot.). Abbott opposes both motions. Dkts. 30 (Opp'n), 31 (Leave Opp'n). The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15.

## I.  FACTUAL BACKGROUND

　　In 2006, Philip Garey, the husband of Plaintiff Cynthia Garey and father of Plaintiffs Shannon Garey, Erin Kelley, and Megan Mackelvie, received an implantable cardiac defibrillator (ICD) to address an arrhythmia. Dkt. 1-1 (Compl.) ¶¶ 5, 23. ICDs correct both fast and slow heart rates and contain a defibrillator that can shock the heart to enable an appropriate rhythm to take

over.  Id. ¶ 2.  In 2015, after the battery in his 2006 ICD began to fail, Mr. Garey underwent surgery to implant a new ICD manufactured by Abbott.  Id. ¶ 24.  Although the lead that connected the ICD to Mr. Garey's cardiac tissue had been recalled in 2011, it was left in place during the 2015 surgery.  Id. ¶¶ 6, 24.  In 2016, Abbott issued a global medical device advisory and recall for the 2015 ICD due to premature battery depletion.  Id. ¶ 8.  In 2017, Mr. Garey was informed that the recalled lead was failing and that he would again need surgery.  Id. ¶ 25.  On April 12, 2017, the FDA sent a letter to Abbott warning that the ICD software was not fully verified during the final configuration test procedures.  Id. ¶ 10.  On May 19, 2017, Defendant Dr. Raymond Schaerf performed surgery to replace the failing, recalled lead, and the recalled ICD.  Id. ¶¶ 26, 29.  However, Schaerf was unable to remove the recalled ICD, so he moved it to the other side of Mr. Garey's chest.  Id. ¶ 29.  He was also unable to remove the entirety of the old lead, and left the fractured lead, as well as the tip of an extraction sheath (the surgical tool used to take out the lead), inside Mr. Garey.  Id. ¶¶ 26, 29-30.  Scharf notified Mr. Garey that "a foreign body had been left inside [his] chest cavity."  Id. ¶ 30.

On May 25, 2017, Mr. Garey returned to Schaerf due to bleeding from his surgical incisions.  Id. ¶ 27.  Schaerf did a "complete analysis of the defibrillator system" but failed to notify Mr. Garey that the ICD software was not operating in accordance with its FDA approval.  Id. ¶¶ 27-28.  At some point thereafter, Schaerf, with the assistance of Abbott employees, attempted to re-program the recalled ICD.  Id. ¶ 31.  On August 6, 2017, Mr. Garey had a cardiology consultation[1] where it was observed that

---

[1] Mrs. Garey submitted an affidavit in support of her motion to remand declaring that Mr. Garey was hospitalized on August 6-7, 2017 for upper extremity deep vein thrombosis.  Dkt. 23-3 (C. Garey Decl.) at 2.

his ICD was "functioning inappropriately." Id. ¶ 32. On August 13, 2017, remote diagnostics performed by Abbott's software found the ICD to be functioning normally. Id. ¶ 33.

On August 21, 2017, the ICD software misread Mr. Garey's heart rate causing 70 high voltage shocks to be delivered to Mr. Garey's heart within a three- or four-hour period. Id. ¶ 34. The shocks "caused Mr. Garey to scream in agony" and his family called 911. Id. Because the ICD continued to inappropriately shock Mr. Garey, the hospital had to forcibly turn it off with a magnet. Id. ¶¶ 35, 37. However, substantial damage had already occurred and Mr. Garey died early the next morning. Id. ¶ 35.

## II. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction" and "possess only that power authorized by [the] Constitution and statute . . . ." Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994). A defendant may remove an action to federal court if the federal court could exercise subject matter jurisdiction over the action. 28 U.S.C. § 1441(a). "The removal statute is strictly construed against removal jurisdiction" and "[t]he defendant bears the burden of establishing that removal is proper." Provincial Gov't of Marinduque v. Placer Dome, Inc., 582 F.3d 1083, 1087 (9th Cir. 2009). If a defendant fails to meet its burden of establishing the Court has subject matter jurisdiction, the suit is remanded. 28 U.S.C. § 1447(c).

Federal courts have diversity jurisdiction where the amount in controversy exceeds $75,000 and the action is between citizens of different states. 28 U.S.C. §§ 1332, 1441. For purposes of diversity jurisdiction, the Court "may disregard the citizenship of a non-diverse defendant who has been fraudulently joined." Grancare, LLC v. Thrower, 889 F.3d 543, 548 (9th Cir. 2018). A non-diverse defendant is fraudulently joined "[i]f the plaintiff fails

3

to state a cause of action against [the] resident defendant, and the failure is obvious according to the settled rules of the state." Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1067 (9th Cir. 2001) (first alteration in original) (quoting McCabe v. Gen. Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987)). "[T]he test for fraudulent joinder and for failure to state a claim under Rule 12(b)(6) are not equivalent." Grancare, 889 F.3d at 549. Instead, "the standard is similar to the 'wholly insubstantial and frivolous' standard for dismissing claims under Rule 12(b)(1) for lack of federal question jurisdiction." Id. In evaluating a claim of fraudulent joinder, "a federal court must find that a defendant was properly joined and remand the case to state court if there is a '*possibility* that a state court would find that the complaint states a cause of action against any of the [non-diverse] defendants.'" Id. (alteration in original) (emphasis in original) (quoting Hunter v. Philip Morris USA, 582 F.3d 1039, 1046 (9th Cir. 2009)). In this inquiry, "the district court must consider . . . whether a deficiency in the complaint can possibly be cured by granting the plaintiff leave to amend." Id. at 550.

### III. DISCUSSION

The parties agree that the amount in controversy exceeds $75,000 and that Schaerf and Plaintiffs are all citizens of California. However, Abbott claims that Schaerf was fraudulently joined. Plaintiffs bring one cause of action against Schaerf for negligence, alleging that he failed to provide health care within the acceptable standard in the medical community when he broke the tip of the extractor sheath during Mr. Garey's May 19, 2017 surgery, left the extractor sheath and the fractured lead inside of Mr. Garey's chest, and failed to advise Mr. Garey that those items could cause complications. Compl. ¶¶ 62-70. Abbott argues that this claim is barred by the statute of limitations and causation is not adequately pled.

4

## A. Statute of Limitations

"In an action for injury or death against a health care provider based upon such person's alleged professional negligence, the time for the commencement of action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first." Cal. Civ. Proc. Code § 340.5. This provision "establishes two hurdles, not one, to the timely maintenance of a medical malpractice claim." Hills v. Aronsohn, 152 Cal. App. 3d 753, 758 (1984). However, if "a foreign body, which has no therapeutic or diagnostic purpose or effect" is left in the injured person, Cal. Civ. Proc. Code § 340.5, only the one-year discovery period applies. Ashworth v. Mem'l Hosp., 206 Cal. App. 3d 1046, 1058 (1988), reh'g denied and opinion modified (Jan. 20, 1989) (The foreign body exception "gives that patient an unlimited time to discover or to use reasonable diligence to discover the presence of the 'foreign body.' But once the patient discovers or through reasonable diligence would have discovered the 'foreign body' and its role in her injury she only has one year to file her lawsuit against the practitioners responsible for leaving the 'foreign body' inside her.").

Abbott does not dispute that this action was brought within three years of the date of injury (whether Mr. Garey's May 2017 surgery or August 2017 death). Instead, Abbott argues that Plaintiffs' negligence claim against Schaerf is barred by the one-year limitation period because Plaintiffs discovered, or should have discovered, the injury either upon completion of the May 19, 2017 surgery, Notice ¶ 32, or after Mr. Garey's death on August 22, 2017, Opp'n at 6-7. Specifically, Abbott argues that because Schaerf "notified [Mr. Garey] that a foreign body had been left inside [his] chest cavity" after the May 2017 surgery, Compl. ¶ 30, his death "would prompt a reasonable person to suspect the

5

possibility of some wrongdoing" and "to investigate the cause of Mr. Garey's death," Opp'n at 6, 7.

The clock does not start to tick under the one-year limitations period until "the patient discovers or through reasonable diligence would have discovered the 'foreign body' *and its role in her injury*." Ashworth, 206 Cal. App. 3d at 1058 (emphasis added).[2] In other words, Plaintiffs had one year from the time when they had "notice of the continuing presence of the [extractor sheath]" and when they "knew or should have known this [extractor sheath] was the negligent cause of [Mr. Garey's] injury." Id. at 1059; see also id. at 1060-61 (one year period did not begin when plaintiff held an "apparently *erroneous* suspicion that this wound was the result of other acts of malpractice she knew about," but "remained unaware of the specific 'negligent cause' of the oozing wound"). It is not enough to show that Plaintiffs knew or should have known that a foreign body was left in Mr. Garey's chest, but Abbott must show that it has been more than one year since Plaintiffs "discover[ed] or in the exercise of reasonable diligence should have discovered, that the [foreign body] was *improperly* left in his [chest]." See Osborne v. Cty. of Los Angeles, 91 Cal. App. 3d 366, 370 (1979); see also Artal v. Allen, 111 Cal. App. 4th 273, 280-81 (2003) (That patient "fe[lt] that some sort of trauma was caused during intubation . . . merely showed that [the plaintiff] suspected there was a connection between the intubation and her throat pain," and did not show that the plaintiff "knew, or by reasonable diligence should have known, that the throat pain was caused by professional negligence"); Hills, 152 Cal. App. 3d at 760 (Claim "not barred as a

---

[2] Abbott's attempt to distinguish Ashworth and Osborne misses the mark. Opp'n at 13. Although in those cases the foreign body exception operated to lift the three-year requirement, the courts still analyzed whether the one-year rule was satisfied, which is the same issue relevant here.

6

matter of law by the one-year limitation period" where the plaintiff's doctor told her she had silicone deposits in her breasts, because "she may not have known the lumps were anything other than the effects of non-negligent silicone injections" until another "surgeon informed her that *negligent* silicone injections caused her injury."); Clark v. Baxter Healthcare Corp., 83 Cal. App. 4th 1048, 1060 (2000), as modified on denial of reh'g (Oct. 20, 2000) (factual issue as to whether one cause of injury "perforce le[]d [the plaintiff] to suspect that" defendant's wrongdoing also caused her injury).

Plaintiffs claim they did not learn about the presence of the extractor sheath in Mr. Garey's body, or that leaving the extractor sheath in Mr. Garey could have increased his risk for developing an upper extremity deep vein thrombosis, until February 2019 as a result of an attorney investigation. C. Garey Decl. at 2. Plaintiffs further claim that at the time of Mr. Garey's May 2017 surgery, Schaerf told Mrs. Garey only that he had left "something" in Mr. Garey's body, which she "understood was a portion of the old lead," but that it was "'nothing to worry about' and would not pose a health risk." Id. at 1.[3] Accepting these statements as true

---

[3] Abbott argues that it is irrelevant that Mrs. Garey knew only about the fractured lead in May 2017, so long as she had reason to suspect that Mr. Garey's death was attributable to wrongful conduct. Opp'n at 12. However, a broken part that is "common[ly]" left by surgeons inside a patient, id. at *14 n.3, does not provide inquiry notice that a surgical tool was negligently left in Mr. Garey's body. See Ashworth, 206 Cal. App. 3d at 1062 ("Only discovery of those particular foreign bodies and their causal relation to the patient's injuries can start the clock"); id. at 1058-59 ("[I]t is a triable issue whether the *single* [foreign body] mentioned in the report indeed is the same *two* [foreign bodies] which allegedly caused [plaintiff's] problems. . . . [I]t is not clear the reference to [the foreign body] accounts for both [foreign bodies] [the doctor] discovered."). Regardless, as addressed in detail above, it is not

7

for purposes of this motion, Plaintiff did not discover either the existence of the extractor sheath or its role in Mr. Garey's death until February 2019. However, the Court's inquiry does not end there. The Court must determine whether Plaintiffs, exercising reasonable diligence, could have learned or had reason to suspect that the extractor sheath was in Mr. Garey's body and that it was a negligent cause of Mr. Garey's death more than a year prior to filing this lawsuit.

The California Supreme Court has stated:

> [A] potential plaintiff who suspects that an injury has been wrongfully caused must conduct a reasonable investigation of all potential causes of that injury. If such an investigation would have disclosed a factual basis for a cause of action, the statute of limitations begins to run on that cause of action when the investigation would have brought such information to light.

Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 808-09 (2005); see also Norgart v. Upjohn Co., 21 Cal. 4th 383, 407 (1999) (Where the plaintiffs (decedent's family) believed that the decedent committed suicide in part because of wrongful acts by others, and upon their investigation into her death learned that she committed suicide by overdose of prescription drugs, one of which disclosed on the package insert that it could cause "[s]uicidal tendencies" in patients with depression, they "had reason to discover their causes of action for wrongful death against [the drug manufacturer]."). "[I]f a plaintiff's reasonable and diligent

---

enough for Plaintiffs to learn of the presence of the foreign body; they must also learn that the foreign body was a negligent cause of the injury.

8

investigation discloses only one kind of wrongdoing when the injury was actually caused by tortious conduct of a wholly different sort, the discovery rule postpones accrual of the statute of limitations on the newly discovered claim." Fox, 35 Cal. 4th at 813 (although plaintiff was aware of medical malpractice claim, accrual of products liability claim was delayed under the discovery rule).

As Abbott notes, Plaintiffs apparently did conduct an investigation into Mr. Garey's death that eventually uncovered in February 2019 that the extractor sheath was also left in Mr. Garey's body during the May 2017 surgery. See Opp'n at 7-8; see also C. Garey Decl. at 2. Mrs. Garey does not state whether she conducted any kind of investigation into her husband's death on her own, when she hired a law firm to do so, and when or how the law firm became aware that the extractor sheath was still inside Mr. Garey. However, the Complaint can be reasonably interpreted to allege that while both the extractor sheath and the ICD software malfunction were "substantial factors" in Mr. Garey's death, only the ICD software malfunction was obvious on the date of his death (or shortly thereafter). Therefore, it is not apparent on the face of the Complaint that Plaintiffs should have discovered that the extractor sheath was a negligent cause of Mr. Garey's death on the date of his death.[4] The Court concludes that

---

[4] The California cases cited by Abbott that have addressed statute of limitations at the summary judgement stage are not persuasive. See, e.g., Rose v. Fife, 207 Cal. App. 3d 760, 769-70 (1989), modified (Feb. 1, 1989) (holding "as a matter of law that a reasonable person would have suspected wrongdoing . . . and would have inquired" where "at the time of [the plaintiff's] hospitalization, two doctors told her the infection was caused by the [medical device]" and "she had already heard on the news or read in the papers that the [medical device] caused infections"); Jolly v. Eli Lilly & Co., 44 Cal. 3d 1103, 1112-13 (1988) (claims are time-barred where plaintiff admits that three years before bringing suit "she felt that someone had done

there is a possibility Plaintiffs' claim is not barred by the statute of limitations because it is a question of fact how long it would take after a "reasonable and diligent" investigation, prompted by the ICD software malfunction, to uncover the fact that the extractor sheath was left behind and was also a potential cause of Mr. Garey's death.  See Fox, 35 Cal. 4th 814 (If claims that "seek to redress the same physical injury to the plaintiff . . . are based on two distinct types of wrongdoing," the date of accrual must be considered separately).

Abbott claims that because neither the Complaint nor Mrs. Garey's affidavit "show[] diligence in investigating the circumstances of Mr. Garey's death," or plead "the inability to have made earlier discovery despite reasonable diligence," Opp'n at 11, "Plaintiffs cannot obtain remand based on a purported question of fact regarding their supposed diligence," id. at 12. However, "[b]ecause these arguments go to the sufficiency of the complaint, rather than to the possible viability of the [plaintiffs'] claims . . ., they do not establish fraudulent joinder." Grancare, 889 F.3d at 552; see also Fox, 35 Cal. 4th at 811 (permitting leave to amend so that plaintiff can allege sufficient facts to "support her allegation that she did not suspect, nor did she have reason to discover, facts supporting a [cause of action] against [defendant] until after deposing [another defendant]").

Another district court has come to the same conclusion on similar facts.  In Crone v. Pfizer, Inc., No. C-04-02552 MJJ, 2004 WL 1946386 (N.D. Cal. Sept. 1, 2004), two years after a man committed suicide, his wife and children brought a lawsuit against the man's doctor and the manufacturer of a drug the man was taking at the time he died.  Id. at *1.  The drug manufacturer

---

something wrong to her concerning [the drug at issue], that it was a defective drug and that she should be compensated.").

claimed that the doctor was fraudulently joined because the medical negligence claim asserted against him was barred by the statute of limitations.  See id. at *5.  Although the complaint did not explain why the plaintiffs did not discover, or through the use of reasonable diligence could not have discovered, the injury within one year of the man's death, the plaintiffs submitted a declaration asserting that "they only learned of a possible connection between the decedent's ingestion of [the relevant drug] and his suicide" a year and a half after his death when Plaintiffs were made aware of a television commercial suggesting a connection between the drug and suicide.  Id. at *1, *5.  The court found this declaration sufficient to overcome assertions of fraudulent joinder, even though the defendants argued that the plaintiffs were aware that the doctor was prescribing the drug in a way that was not FDA-approved prior to the man's death, because all the defendants had "done is create a question of fact" which is "to be resolved in favor of the plaintiffs."  Id. at *6.

That the Complaint does not contain detailed factual allegations evidencing that Plaintiffs conducted a reasonable and diligent investigation and could not have discovered the extractor sheath or its connection to Mr. Garey's death sooner is not enough to show that they did not do so.  Abbott bears the burden of proving fraudulent joinder.  Abbott has not shown that there is no possibility of Plaintiffs asserting a viable claim that is not barred by the applicable statute of limitations.

B.   **Causation**

Abbott argues that the Complaint "pleads no facts plausibly suggesting a proximate causal connection between" the "purported failure to remove portions of the old lead and extractor sheath"

11

and Mr. Garey's injuries. Notice ¶ 45.[5] Plaintiffs respond that the Complaint alleges a causal connection between Schaerf's negligence and the upper extremity deep vein thrombosis that Mr. Garey experienced two weeks before his death, and therefore that Schaerf's actions were a "substantial contributing factor to Mr. Gary's death." Mot. at 9. The Court recognizes that the Complaint as it stands provides minimal factual allegations linking the alleged negligence to Mr. Garey's death. However, "[b]ecause these arguments go to the sufficiency of the complaint, rather than to the possible viability of the [plaintiffs'] claims . . ., they do not establish fraudulent joinder." Grancare, 889 F.3d at 552. In addition, the Court finds such deficiency could be cured through amendment. Id. at 549-50 (there need only be a possibility that a state court would find the complaint states a cause of action, including whether any deficiencies could possibly be cured by amendment).

Because Schaerf was not fraudulently joined, diversity jurisdiction did not exist at the time of removal.

## C. Fraudulent Misjoinder

Abbott argues in the alternative the Schaerf was fraudulently misjoined "because the negligence claim against Dr. Schaerf arises from a different nucleus of operative fact than the product-liability claims against Abbott." Notice ¶¶ 47, 51.

---

[5] Abbott also claims that Plaintiffs pleaded that the software malfunction in the ICD is what caused Mr. Garey's death. Opp'n at 18. It is not incumbent on Plaintiff to allege that the extractor sheath tip is the sole cause of Mr. Garey's death. See Grancare, 889 F.3d at 551 ("California applies a broad 'substantial factor' test for legal causation, and [the plaintiffs] need only demonstrate a reasonable possibility that [the defendant's] actions played a role in [plaintiffs' family member's] death that was not merely 'infinitesimal' or 'theoretical.'" (citing Bockrath v. Aldrich Chem. Co., 21 Cal. 4th 71, 79 (1999))).

12

Specifically, Abbott argues, Schaerf's alleged negligence occurred in May 2017 during Mr. Garey's surgery, while Abbott's alleged wrongdoing occurred in August 2017 when Mr. Garey died. Id. ¶¶ 52-23; see also Opp'n at 19-20. At the outset, the Court recognizes that "the Ninth Circuit [has] declined to adopt the doctrine of fraudulent misjoinder" and "no court in the Central District of California . . . has adopted it." Thee Sombrero, Inc. v. Murphy, No. EDCV 15-001004-VAP (SPx), 2015 WL 4399631, at *4 (C.D. Cal. July 17, 2015) (collecting cases); see also Gleicher v. Hartford Underwriters Ins. Co., No. CV 17-0773 FMO (GJSX), 2017 WL 1370689, at *3 (C.D. Cal. Apr. 10, 2017) ("Consistent with the overwhelming rejection of the procedural misjoinder doctrine in this District, this court also declines to adopt it.").

However, the Court need not decide whether to adopt the doctrine because it does not apply here. Plaintiffs allege that both Schaerf's negligence and the ICD malfunction were substantial contributing factors to Mr. Garey's death. Therefore, Abbott and Schaerf are properly joined as co-defendants under California law. See Cal. Civ. Proc. Code § 379 ("All persons may be joined in one action as defendants if there is asserted against them: (1) Any right to relief jointly, severally, or in the alternative, in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action"); see also Lopez v. Pfeffer, No. 13-CV-03341 NC, 2013 WL 5367723, at *4 (N.D. Cal. Sept. 25, 2013) (holding that defendant's "argument that there is no real connection between the pelvic mesh manufacturers and the doctor and medical group that implanted that pelvic mesh is without merit."). Moreover, even if Abbott and Schaerf were misjoined, it cannot be said that joinder of "these parties is so egregious as to constitute fraudulent joinder." Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1360 (11th Cir.

1996), <u>overruled on other grounds by</u> Cohen v. Office Depot, Inc., 204 F.3d 1069 (11th Cir. 2000).

## IV. CONCLUSION

The motion to remand is GRANTED. The motion for leave to amend is DENIED as moot. The case is REMANDED to the Superior Court of California, County of Los Angeles.

IT IS SO ORDERED.

Date: December 16, 2019

*[signature]*

Dale S. Fischer
United States District Judge